**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

General Electric Company,

Case No. 08-cv-298-bbc

Plaintiff-Counter-Defendant,

v.

SonoSite, Inc.,

Defendant-Counter-Plaintiff.

---

**DEFENDANT-COUNTER-PLAINTIFF SONOSITE, INC'S RESPONSE TO GE'S MOTION *IN LIMINE* TO PRECLUDE SONOSITE FROM ADMITTING EVIDENCE INCONSISTENT WITH THE COURT'S CLAIM CONSTRUCTION ORDER**

---

## I. INTRODUCTION

Defendant SonoSite respectfully submits this memorandum in response to GE's motion *in limine* to preclude SonoSite from presenting unidentified evidence that GE considers to be contrary to the Court's Claim Construction Order, DKT. No. 82 ("Cl. Constr. Order"). SonoSite contends that the evidence it has gathered for trial is consistent with the Court's Order, as was the evidence it filed in support of its motions for summary judgment (DKT. No. 140) and in opposition to GE's motions for summary judgment (DKT. NO. 163) earlier this year. However, based on GE's requests for admission, served April 8, 2009, as well as the pending motion, it is apparent that GE interprets the scope of the '412 patent claims, and this Court's Claim Construction Order, differently from SonoSite. For this reason, SonoSite asks that the Court clarify its claim construction to acknowledge even more expressly that the '412 patent claims pertain to ultrasound imaging systems for use in diagnostic medical applications. This clarification is consistent with the Court's original Order and is neither untimely nor unfair to GE.

Even if the Court declines to clarify its order, GE's motion should be denied because none of SonoSite's evidence is inconsistent with the current Claim Construction Order and all of it is relevant to issues to be tried.

## II. BACKGROUND

This lawsuit seeks to invalidate one of the cornerstone patents of the Hand Carried Ultrasound industry. GE attempts to meet its burden of proving that the asserted claims of the '412 patent are invalid under 35 U.S.C. Section 103 based on prior art references that were little more than dead-ends, useless to medical practitioners because of poor image quality and other disadvantages. Because the evidence at trial will establish that the alleged prior art had seriously disabling flaws, GE now proposes that the Court

should adopt a literal and demonstrably unreasonable interpretation of the '412 patent claims that it thinks will render them more vulnerable to an attack of "obviousness."[1]

More specifically, GE asserted for the first time during summary judgment briefing, and apparently will argue at trial, that the claims of the '412 patent have nothing to do with the invention's only stated utility: medical diagnosis. GE asserts that the claims cover any device emitting ultrasound signals that manages to produce a black and white image, regardless of the image's accuracy or utility in diagnostic applications.

As all witnesses at trial will agree, however, "diagnostic ultrasonic imaging" implicitly requires the production of a high quality image, something that was not achieved in an ultra-portable device (under ten pounds) before the invention of the '412 patent. In distinguishing and overcoming the disadvantages of the diagnostic ultrasound prior art, the '412 patent claims neither a general purpose ultrasound device nor an ultrasound system with image quality so poor as to render it unfit for clinical use. Rather, as discussed below, the '412 patent specification discloses a system suitable for use by medical professionals to diagnose diseases and injuries.

## III. ARGUMENT

### A. The '412 Patent Discloses A Medical Diagnostic Ultrasound System And Its Claims Should Be Construed Consistent With That Disclosure.

GE's motion *in limine* invites the Court to ignore the entire '412 patent disclosure when interpreting the words of the asserted claims. However, the Federal Circuit has repeatedly stated that when the written description discloses the features of an invention *as a whole*, such description limits the scope of the claims. *E.g.*, *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006); *accord Decisioning.com, Inc. v.*

[1] GE's position regarding claim scope became apparent particularly in its Reply Brief in Support of GE's Motion for Summary Judgment, DKT. No. 180, where it likened the '412 patent to a "Yugo" (GE Reply Summ. J. Br. at 1), accused SonoSite of reading limitations into the claims (*id*. at 3) and specifically argued (*id*. at 5) that the claims are not limited to diagnostic devices. This prior briefing completely rebuts GE's professed "surprise" in reading SonoSite's responses to interrogatories or requests for admission.

*Federated Department Stores, Inc.*, 527 F.3d 1300 (Fed. Cir. 2008) (limiting broad claim term to cover only the single embodiment disclosed in specification, described as "the present invention," where description of invention's features was not consistent with other embodiments). In *Honeywell*, the Federal Circuit limited the scope of the broad claim term "fuel system component" to mean only "fuel filter" for three reasons, although the latter term appeared nowhere in the claims. First, the written description generally referred to a fuel filter as "this invention" and "the present invention." *Id.* Second, a fuel filter was the only fuel system component disclosed anywhere in the written description. *Id.* Third, the detailed discussion of the prior art problem addressed by the patentees was solely directed to leaky fuel filters. *Id.* Hence, in light of the patent as a whole, the court concluded that the claims covered only a fuel filter, despite their broader diction.

The title of the '412 patent is "Handheld Ultrasonic **Diagnostic System**" (emphasis added). The very first sentence of the '412 patent defines the invention that it claims: "**[t]his invention** relates to **medical diagnostic systems** and, in particular, to a fully integrated hand held **ultrasonic diagnostic instrument**." '412 pat., col. 1, lns. 3-5 (emphasis added). Two paragraphs later, the specification repeats the definition of the invention: "[i]n accordance with the principles of **the present invention, a diagnostic ultrasound instrument** is provided…." *Id.,* lns. 31-32 (emphasis added). Furthermore, **every** description of the invention and its use in the patent pertains to medical diagnosis. And, Figures 13-22 present many details of scan conversion, scan line interpolation, B mode and Doppler images and other specific imaging controls that are unique to diagnostic ultrasound. Finally, as in *Honeywell*, the entirety of the discussion of the prior art is directed to problems with "modern ultrasonic **diagnostic systems**" that are overcome by the claimed inventions. Col. 1, lns. 6-7 (emphasis added).

Consistent with the disclosure, the elements of the claims are components found in diagnostic ultrasound instruments, e.g., a beamformer, scan converter, and image display. A skilled practitioner reading the '412 patent specification would understand that *all* of

the components recited by the dependent claims serve to provide an image of suitable quality for medical diagnostic use. All of these components are present to maximize the system's image quality when the system is used in a clinical setting. Indeed, GE itself agrees that at least two of these components, the "digital filter" of claims 12, 13, and 17 and the "image processor" of claims 13, 14, 17, and 18 modulate and "enhance" the system's images.[2] Cl. Constr. Order at 13.

Conversely, the '412 patent contains no disclosures that pertain to any use of ultrasound other than for medical diagnostic imaging. For example, it does not address the use of ultrasound for finding submarines, the use of high intensity ultrasound for cancer therapy, or the use of ultrasound to ward off deer or barking dogs. Nor do the components of the claims pertain to any such uses.

Clarifying the construction of "ultrasound system" to refer to "medical diagnostic imaging system" would furthermore be consistent with the Court's Claim Construction Order. In that order, the Court stated: "[t]he '412 patent discloses a method for fabricating a handheld ultrasonic *diagnostic* instrument that is reduced in size while maintaining as many of the features of today's sophisticated ultrasound systems as possible, such as speckle reduction, color Doppler and three dimensional imaging capabilities." *Id.* at 4 (emphasis added). The Court's description of the '412 patent accurately captured both the medical aspect of the system ("a handheld ultrasonic diagnostic instrument") and the concomitant need for acceptable image quality ("while maintaining as many of the features of today's sophisticated ultrasound systems as possible, such as speckle reduction….").

In light of this, GE's position that the asserted claims are not limited to medical or diagnostic ultrasound systems is simply wrong. While the claims as construed by the

[2] The parties agreed that "digital filter" means "in an ultrasound system, one or more components that reduce, extract or enhance certain aspects of a digital signal" and that "image processor" means "in an ultrasound system, one or more components that manipulate, enhance, or otherwise modify image data." Cl. Constr. Order at 13.

Court recite only the phrase "in an ultrasound system," it is crystal clear that that phrase relates to the only system described in the patent: a medical diagnostic ultrasound system. Accordingly, the Court can and should clarify its construction to specifically recite this inherent limitation.

**B. GE's Case Law Is Not Controlling.**

GE attempts to rush the Court past its own Claim Construction Order by arguing that other courts "do not hesitate to grant motions *in limine* to preclude evidence and testimony that varies with the court's construction of disputed claim terms." But, the cases GE offers for this proposition tell a different story. In *Coca-Cola Co. v. Pepsico, Inc.*, 2005 WL 5974444 (N.D. Ga. Mar. 17, 2005), for example, the court refused to allow testimony by the defendant's expert that two elements must cross in order to be perpendicular. In that case, the parties each briefed the court on precisely that issue before the *Markman* hearing and the court declined to impose the "crossing" limitation because doing so would have "exclude[d] a preferred embodiment from the scope of the patents" and would have rendered another limitation "largely, if not entirely superfluous." *Id.* at *1. There, the court refused to allow testimony that would have read the preferred embodiment out of the patent.

Here, SonoSite seeks only a clarification of language already in the Court's Claim Construction Order ("in an ultrasound system") that correctly ties the claims to the written description. While GE correctly reports that the court in *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 2004 WL 5508752 (S.D. Iowa Sept. 9, 2004) noted that "evidence should be limited to what is consistent with the Court's claim construction," that court went on to *deny* the motion *in limine* to exclude the controverted evidence because "[s]ome flexibility at trial will no doubt arise with regard to each party's evidence as to their understanding and actions, and evidentiary judgments will need to be made when such evidence appears to directly clash with the claim

construction." *Id.* at *5. Nothing SonoSite seeks to be clarified "directly clashes" with anything in the Court's Claim Construction Order. As in *Kemin Foods*, this Court should not preclude SonoSite from presenting evidence relevant to the determination of obviousness before trial has even begun. *See* Section III, *infra*.

Nor is it untimely to clarify the Court's Claim Construction. Claim construction is an issue of law and there is no set time at which claim construction, let alone clarification of a construction, needs to take place. *Conoco, Inv. v. Energy & Envtl. Int'l,* 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("district courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves'")(citations omitted); *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) (a district court has wide latitude to approach claim construction in any way that it deems best). Indeed, this Court has construed claims only eleven days before a final pretrial conference. *John Mezzalingua Associates, Inc. v. Arris Intern., Inc.*, 2003 WL 23282752 (W.D. Wis. Nov. 14, 2003). Moreover, clarification is hardly prejudicial to GE, which in any event has known ever since cross-motions for summary judgment were filed that SonoSite considers the medical diagnostic scope of the '412 patent and the image quality necessary for that purpose to be relevant issues for trial.[3]

[3] It is not the case, as GE contends, that SonoSite only "recently asserted, for the first time" that the system disclosed by the '412 patent is properly understood to be a medical diagnostic system or that image quality is relevant to the claimed invention. *See* note 1, *supra*. In addition, on March 6, SonoSite responded to GE's Proposed Finding of Fact No. 58, "[t]he asserted claims do not require any level of image quality or performance." SonoSite Inc.'s Responses to Plaintiff-Counter-Defendant General Electric Company's Proposed Findings of Fact in Support of Its Motion for Summary Judgment of Invalidity and Noninfringement of U.S. Patent No. 5,722,412, DKT No. 164 at 11. That response was clear: "DISPUTED. The invention is directed to, and the claims cover, operative diagnostic ultrasound instruments that have utility. 35 U.S.C. § 101. The title of the patent is 'Handheld Ultrasound Diagnostic Instrument.' Without a minimum level of image quality, a diagnostic ultrasound instrument would not be operative or have utility."

### C. SonoSite's Evidence Regarding The Failings Of The Prior Art Is Consistent With The Court's Claim Construction, Whether Or Not It Is Clarified.

GE's motion in limine does not cite either a document or a line of testimony that it seeks to preclude from trial, which makes it exceedingly difficult to rebut. Simply put, SonoSite does not know what particular evidence GE believes to be inconsistent with the claim construction.

Assuming arguendo that the motion is directed at statements about diagnostic imaging, all of SonoSite's intended evidence is relevant and consistent with the Court's prior orders. This Court's construction of the asserted claims begins with the phrase "in an ultrasound system." Thus, even without clarification, the construction requires that the claims' recited components be part of a "system," which is "a functionally related group of elements."[4] Such a system must have utility in order to be patentable, and in the context of the '412 patent claims that functionality relates to the production of a ultrasound image that medical specialists can see and interpret.[5] That is the essence of an imaging device.

As noted above, the asserted claims of the '412 patent specifically require a number of components to produce an image from the digitized echo signals received by the transducer. SonoSite is entitled to present evidence that those components, as more fully taught in the specification, provided significant innovation over the prior art, like the MiniVisor, because the image quality they support is significantly greater. Indeed, explaining the differences between some of the prior art and the asserted claims begins with a showing that no image processing electronics are even mentioned in the reference, much less sufficiently explained so as to produce a useful image. All such evidence is relevant and consistent with the Court's construction.

---

[4] See Webster's II New College Dictionary (1995).

[5] SonoSite does not contend that the '412 patent claims require a specific level of power consumption or a particular spatial resolution. Rather, the '412 patent discloses a system capable of producing images that can be used for diagnosis.

Likewise, evidence that a reference did not enable someone of ordinary skill in the art to design an under ten-pound system capable of producing any acceptable image is directly relevant to whether that reference renders the '412 patent claims obvious. Again, if a publication does not teach how to make an ultrasound *system*, i.e., a related group of elements that function to produce an acceptable image, it cannot invalidate the '412 patent.

In summary, the trier of fact is entitled to hear evidence that places the patent and prior art in a proper context. An accurate presentation of the functionality of prior art devices and articles, and their comparison to the system disclosed by the '412 patent, necessarily includes testimony and documentary evidence regarding the intended uses of the respective systems and the qualities and components that enabled such uses. Without a complete and accurate view of the relationship between the '412 patent and the alleged prior art, any determination of obviousness would be hazardous and incomplete.

## IV. CONCLUSION

For the foregoing reasons, SonoSite respectfully requests that the Court clarify its claim construction order and otherwise deny GE's motion in limine.

Dated: May 26, 2009

**ORRICK HERRINGTON & SUTCLIFFE LLP**

*/s/ M. Patricia Thayer*

M. Patricia Thayer
pthayer@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-4575
(415) 773-5759 (fax)

Mark S. Parris
mparris@orrick.com
Jeffrey Cox
jcox@orrick.com
701 Fifth Avenue
Suite 5700
Seattle, WA 98104-7097
(206) 839-4300
(206) 839-4301 (fax)

**PERKINS COIE LLP**

John S. Skilton
jskilton@perkinscoie.com
Lissa R. Koop
lkoop@perkinscoie.com
One East Main Street, Suite 201
Madison, WI 53703-5118
(608) 663-7460
(608) 663-7499 (fax)

*Attorneys for Defendant-Counter-Plaintiff SonoSite, Inc.*