**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

General Electric Company,

    Plaintiff-Counter-Defendant,                                    Case No. 08-cv-298-bbc

    v.

SonoSite, Inc.,

    Defendant-Counter-Plaintiff.

**BRIEF OF PLAINTIFF-COUNTER-DEFENDANT
GENERAL ELECTRIC COMPANY IN SUPPORT OF
MOTION FOR CLARIFICATION OF THE COURT'S
CONSTRUCTION OF "SAMPLED DATA BEAMFORMER"**

General Electric Company ("GE") respectfully requests clarification of an ambiguity regarding claim construction that appears in the Court's Opinion and Order dated May 26, 2009 (the "May 26 Order").  [DKT 227.]  Clarification is required so that the parties can present their respective cases at trial in the context of the Court's construction.

**The Court's *Markman* Ruling**

In this Court's *Markman* decision [DKT 82], the phrase "sampled data beamformer" was construed.  In that opinion and order the Court adopted GE's construction:

> Because the language in the prosecution history does not make it clear what type of signal is output by the "sampled data beamformer" in claim 11, defendant's proposed limitation cannot be correct.  ***I will adopt plaintiff's proposed construction, which says nothing about the nature of the output***.

[DKT 82 at 8 (emphasis added).]  The Court then construed the phrase to refer only to the input to the beamformer and to require that the input be analog *or* digital samples *or* both:

> in an ultrasound system, one or more components that delay and combine analog *or* digital samples of echo signals *or* both such samples received by elements of said array transducer.

[DKT 82 at 8 (emphasis added).]

**The Court's May 26 Order**

In the May 26 Order [DKT 227], the Court refers to the "sampled data beamformer" phrase several times in its discussion.

> The Chiang patent discloses CCD technology, which is an analog type of sampled data beamformer.

[DKT 227 at 11.]

> A digital beamformer is a type of sampled data beamformer.

[DKT 227 at 20.]

> In the court's claim construction order, I determined that a sampled data beamformer "delay[s] and combine[s] analog *or* digital samples of echo signals *or* both such samples received by elements of said array transducer."

[DKT 227 at 48 (emphasis added).]

In each of these statements, the Court has defined "sample data beamformer" in a manner consistent with its claim construction: a beamformer that delays and combines analog *or* digital samples *or* both such samples. This is the construction that both parties and their experts employed in both their infringement and invalidity analyses.

However, the May 26 Order contains references to sampled data beamformer that are inconsistent with and significantly narrower than this definition. Specifically, in discussing the Karaman Reference, the Court referenced the following definition of "sampled data beamformer":

> A sampled data beamformer is a beamformer that receives **both** digital **and** analog echo signals, combines and converts these signals and then outputs a digital signal.

[DKT 227 at 34 (emphasis added).] In contrast to its *Markman* definition, this description of a sampled data beamformer would appear to require that a sampled data beamformer receive **both** analog **and** digital echo signals, not either digital *or* analog samples *or* both. This definition also limits the nature of the output, unlike the *Markman* definition. This very narrow characterization of a sampled data beamformer is repeated on the next page of the May 26 Order.

> The only "evidence" submitted by plaintiff to prove the existence of a "sampled data beamformer," that is, one that receives **both** digital **and** analog echo signals and outputs a digital signal, is the conclusory testimony of its expert, which is insufficient to establish a dispute of material fact.

[DKT 227 at 35 (emphasis added).]

Based on this alternate definition of "sampled data beamformer," the Court concluded that the Karaman Reference lacked a disclosure of a sampled data beamformer because it only discloses a digital beamformer:

> However, *plaintiff does not identify any passage that* indicates that the article *also discusses analog beamformers*.

[DKT 227 at 34-35 (emphasis added).]

> Because the Karaman Reference *fails to discuss both digital and analog beamformers*, it fails to meet a limitation of claim 11 of the '412 patent.

[DKT 227 at 35 (emphasis added).]

Neither party nor their experts analyzed the Karaman Reference or any other issue based on this narrowed definition.

**The Requested Clarification**

The question presented by this motion is: has the Court altered its construction of sampled data beamformer provided in its *Markman* order? As the Court is aware, the same definition must be applied for all purposes. *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement."); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."). Here it appears that the Court has applied two different definitions of sampled data beamformer.

It is black letter law that the disclosure in the prior art of one example of a device that falls within a claimed class of devices anticipates the class of devices. *Eli Lilly & Co. v. Barr*

*Labs., Inc.,* 251 F.3d 955, 971 (Fed. Cir. 2001) ("Our case law firmly establishes that a later genus claim limitation is anticipated by, and therefore not patentably distinct from, an earlier species claim."). Accordingly, GE believes that the Court's conclusion that the Karaman Reference discloses one kind of sampled data beamformer (a digital beamformer) should have led to the conclusion that the sampled data beamformer limitation – as defined in the *Markman* order – is literally satisfied by the Karaman Reference.

GE believes another fundamental maxim of patent law also compels the same conclusion. According to that maxim, if the presence of a component in an accused device satisfies a claim limitation for infringement purposes, the disclosure of that component in a prior art reference anticipates the limitation.

> Kris's performance of these same steps today would literally
> infringe the '803 claims; it is axiomatic that that which would
> literally infringe if later anticipates if earlier.

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). Here, the finding of infringement by the lightweight Venue 40 product is premised on the Court's *Markman* definition, under which a digital beamformer is a sampled data beamformer. [DKT 227 at 24.] Accordingly, GE believes that, just as application of the Court's *Markman* definition led to the conclusion that the presence of a digital beamformer in the accused Venue product literally meets the sampled data beamformer limitation for infringement purposes, so too the disclosure of a digital beamformer in the Karaman Reference should have led to the conclusion that Karaman anticipates the sampled data beamformer limitation.

Conversely, if the correct definition of "sampled data beamformer" is the narrower one used by the Court in its treatment of the Karaman Reference in its May 26 Order, the issue of infringement should be revisited. That issue was decided based on the *Markman* definition of a

-4-

"sampled data beamformer" as one that delays and combines analog *or* digital samples of data *or* both. If the May 26 definition requiring that a beamformer receives **both** analog and digital signals which are combined and converted is applied to the infringement analysis, neither accused product meets the sampled data beamformer limitation. In addition, if the narrower May 26 definition is correct, both parties will need to supplement their expert reports to evaluate the prior art in the context of that narrower definition.

## CONCLUSION

GE respectfully requests that the Court clarify its construction of "sampled data beamformer."

Respectfully submitted,

May 29, 2009            By:    *s/ Jeffrey A. Simmons*

Allen A. Arntsen
aarntsen@foley.com
Jeffrey A. Simmons
jsimmons@foley.com
Justin Edwin Gray
jegray@foley.com
**FOLEY & LARDNER LLP**
150 E. Gilman Street
P.O. Box 1497
Madison, WI 53701-1497
Tel: 608-258-4293; Fax: 608-258-4258

Matthew M. Wolf
wolfm@howrey.com
Sara P. Zogg
zoggsara@howrey.com
**HOWREY LLP**
1299 Pennsylvania Avenue N.W.
Washington, DC 20004
Tel: 202-783-0800; Fax: 202-383-6610

Jennifer A. Sklenar
sklenarj@howrey.com
**HOWREY LLP**
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
Tel: 213-892-1800; Fax: 213-892-2100


Theresa M. Gillis
gillist@howrey.com
**HOWREY LLP**
153 East 53rd Street, 54th Floor
New York, NY 10022
Tel: 212-896-6631; Fax: 212-896-6501

Robert E. McAlhany, Jr., Ph.D.
mcalhanyr@howrey.com
**HOWREY LLP**
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
Tel: 650-798-3500; Fax: 650-798-3600

Attorneys for Plaintiff-Counter-Defendant