IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GENERAL ELECTRIC COMPANY,

                        Plaintiff,

     v.

SONOSITE, INC.,

                        Defendant.

ORDER

08-cv-298-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for patent infringement, plaintiff General Electric Company sought a declaration that plaintiff's new handheld ultrasound products did not infringe defendant Sonosite Inc.'s U.S. Patent No. 5,722,412 (the '412 patent) because defendant's patent was invalid under 35 U.S.C. § 102, 103 and 112. On May 26, 2009, I issued a summary judgment order in which I granted judgment in plaintiff's favor that its new Venue 40 system did not infringe the '412 patent; however, I found that its lightweight Venue 40 system did infringe the patent. With respect to plaintiff's claim that the '412 patent was invalid, I dismissed the following invalidity defenses because I found that plaintiff had failed to adduce clear and convincing evidence of them: (1) lack of enablement; (2) best mode requirement; (3) written description requirement; and (4) indefiniteness. I conclude that

1

two grounds for invalidity, anticipation and obviousness, could not be resolved at summary judgment and were set for trial on June 8, 2009.

Now before the court is plaintiff's motion for clarification of the court's construction of "sampled data beamfomer." Although plaintiff's motion is styled as a motion to clarify, it also asks the court to reconsider the finding that the Karaman Reference does not anticipate claim 11 of the '412 patent, contending that this court misapplied the law of anticipation. In addition, plaintiff requests the opportunity to rebrief the issue of infringement if the definition of "sampled data beamformer" has been altered.

Plaintiff argues that I may have altered its construction of the term "sampled data beamformer" when I referred to a sampled data beamformer as "a beamformer that receives both digital and analog echo signals, combines and converts these signals and then outputs a digital signal." Order, dkt. #227, at 34. Plaintiff contends that this is inconsistent with the court's November 26, 2008 claim construction order, in which I stated that a sampled data beamformer means "in an ultrasound system, one or more components that delay and combine analog or digital samples of echo signals or both such samples received by elements of said array transducer." Order, dkt. #82, as 12-13. In addition, I concluded in that order that claim 11 did not require that an output be digital or analog. Id. at 8.

With respect to plaintiff's request for clarification, I have not adopted a new construction of the term "sampled data beamformer." Although there may have been some

ambiguous language in the May 26 order, the construction I adopted in the November 26 order was and still is the appropriate definition. Plaintiff is correct that a sampled data beamformer as used in claim 11 does not require a digital output and the description used in the May 26 order was incorrect. However, the output of the beamfomer was not an issue addressed in either party's motion for summary judgment. Therefore, there is no reason to alter any of the findings in the May 26 order.

In describing a sampled data beamformer as "a beamformer that receives both analog and a digital signals," I was not reading a limitation in to the term but using a shorthand to describe what would have to have been disclosed in a prior art reference to be considered a sampled data beamformer. However, it appears that plaintiff is correct that I concluded mistakenly that the Karaman reference did not teach a "sampled data beamformer." By disclosing a digital beamformer, the Karaman reference did teach part of the claimed invention of the '412 patent. Eli Lilly and Co. v. Barr Laboratories, Inc., 251 F.3d 955, 971 (Fed Cir. 2001) ("a later genus claim limitation is anticipated by, and therefore not patentably distinct from, an earlier species claim.").

Nonetheless, this does not alter the finding that the Karaman Reference does not anticipate the '412 patent as a matter of law. Anticipation "requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the

3

invention." Sanofi-Synthelabo v. Apotex, Inc., 550 F.3d 1075, 1082 (Fed. Cir. 2008). Even if the Karaman Reference teaches a sampled data beamformer, it does not disclose the ten pound weight limitation of claim 11 of the '412 patent. Plaintiff has not challenged this finding. Therefore, there is no basis for modifying the May 26 order the Karaman Reference does not anticipate the '412 patent.

## ORDER

IT IS ORDERED that

1. Plaintiff General Electric Company's motion for clarification, dkt. #230, is GRANTED with respect to its request to clarify the proper meaning of the term "sampled data beamformer." The term "sampled data beamformer" as used in claim 11 of the '412 patent means "in an ultrasound system, one or more components that delay and combine analog or digital samples of echo signals or both such samples received by elements of said array transducer."

4

2. Plaintiff's motion for clarification, dkt. #230, is DENIED with respect to its requests that this court reconsider its finding that the Karaman Reference does not anticipate claim 11 of U.S. Patent No. 5,722,412 or that the issue whether plaintiff's products infringes U.S. Patent No. 5,722,412 be revisited.

Entered this 2nd day of June, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

5